UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20674-Cr-GAYLES

UNITED STATES OF AMERICA,

vs.

GUSTAVO LINARES GUZMAN,

        Defendant.
_____/

## FACTUAL PROFFER

The United States of America and defendant Gustavo Linares Guzman ("Linares") hereby stipulate and agree to the following facts, which form the basis for the defendant's plea of guilty to Count 2 of the Sixth Superseding Indictment. The defendant stipulates that the United States could prove these facts beyond a reasonable doubt if this case were to go to trial.

1. During the time period of the charged offense, Linares was working with codefendants in some of their business activities. Linares became aware that some of those activities involved the distribution and sale of diverted pharmaceuticals.

2. Diverted pharmaceuticals are prescription drugs such as HIV treatments that were obtained by buying them from recipients to whom they were prescribed or through health care fraud. Such drugs are extremely expensive at legitimate retail prices. However, conspirators in this case were able to buy them from such sources in quantities, at greatly discounted prices. This allowed them to sell the medicines at very high profits.



3. The legal marketing of such drugs requires the preparation of transaction history reports, also known as "pedigrees", that accurately identify the medicine, the manufacturer, the

selling entity, the dosage, lot number, and all prior purchases and sales of the drugs in that shipment.  In addition, these medicines can only be distributed pre-retail by licensed pharmaceutical wholesalers.  In order to carry out this scheme, Linares and other conspirators prepared falsified pedigrees that claimed the drugs in each shipment had been purchased from manufacturers, or from other, legitimate wholesalers.  Various shell companies were established by conspirators to give the appearance that the drugs were moving in legitimate commerce.

4. In 2018, a codefendant made arrangements to sell quantities of diverted pharmaceuticals to LLC Wholesale Supply LLC in Arizona ("LLC"), using co-conspirators to make the connections for the deal.  The codefendant needed a company, bank account, and a front man to carry out this operation.

5. Linares agreed to participate in this activity.  He understood that it involved setting up corporations, obtaining pharmaceutical wholesale licenses for them, and opening back accounts, which the co-defendant would work on.  The co-defendant prepared and submitted the pharmaceutical wholesale licensing application and prepared the documentation for a corporation, LDD Distributors LLC, that Linares would operate.  They agreed that that Linares would be the ostensible owner of the corporation and the signatory on its bank account.  Linares travelled to Connecticut in order to sign the documents to open the corporation and its office there.  He also opened an account for LDD Distributors at a Connecticut branch of TD Bank.

6. Once the corporation and its bank account were established, Linares sent emails to Joshua Joles, the manager of LLC Wholesale Supply in Arizona, introducing himself and his company.  He provided Joles with lists of the drugs he had available for sale, the quantities, and the prices.  The prices were normally set approximately 17% below the legitimate wholesale acquisition cost.  Joles made multiple purchases of diverted drugs from Linares for which Linares



included falsified pedigrees claiming the drugs had been purchased directly from the manufacturers..

7. The sales Linares made from LDD Distributors to LLC Wholesale Supply between 2018 and 2019 that totaled approximately $7.3 million. The proceeds of the sales were paid by check or wire-transferred from LLC's account to the LDD Distributors' account at TD Bank. From there, Linares wrote and signed checks and initiated wire-transfers of funds in a series of transactions through multiple accounts of different shell corporations. Many of these were set up to appear as wholesale pharmaceutical distributors, to make it appear that LDD was buying drugs legitimately instead drugs diverted from health care fraud or street sales.

8. Linares knew that the bank accounts and money transfers were designed to conceal the nature and source of the funds, and their ownership and control. Some of the money was ultimately withdrawn in cash from banks in Miami and used to pay the members of the conspiracy. It was also used for the purchase of additional diverted drugs.

8. Diverted drugs were shipped from various locations using falsified pedigrees to make it appear that they had been purchased through legitimate modes of such commerce, when in fact they had been bought on the streets from unknown sources. The drugs were shipped via an interstate commercial carrier, FedEx, to LLC in Arizona.

_____
GUSTAVO LINARES GUZMAN
Defendant

_____
EDWIN PRADO, ESQ.
Defense Counsel
12/18/2024

_____
FRANK H. TAMEN
Assistant United States Attorney

12/18/2024
_____
DATE