## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**GUSTAVO LINARES GUZMAN,**

**Defendant.**

**CASE NO. 19-CR-20674-DPG**

### DEFENDANT GUSTAVO LINARES GUZMAN'S
### SENTENCING MEMORANDUM IN SUPPORT OF A VARIANCE
### AND REQUEST FOR LENIENCY

### I.   INTRODUCTION

Comes now the Defendant, **Gustavo Linares Guzman**, by and through undersigned counsel, and respectfully submits this Sentencing Memorandum in support of a non-guideline sentence that reflects the purposes of sentencing codified in 18 U.S.C. § 3553(a). Mr. Linares respectfully urges this Honorable Court to consider his uniquely limited role in the charged conspiracy, his lack of prior criminal history, the minimal pecuniary gain he received, and the profound collateral consequences he will endure, as compelling grounds for a substantial downward variance.

This Court, pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005), possesses the discretion and constitutional obligation to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals of sentencing. That imperative applies with particular force in this case, where the advisory Sentencing Guidelines produce a punishment grossly disproportionate to Mr. Linares's culpability and his actual conduct within the broader scheme.

Mr. Linares is a first-time offender who was brought into an ongoing operation at the behest of a more experienced and manipulative co-conspirator, and who operated under direction with no meaningful participation in the planning, design, or core financial benefits of the underlying fraud. His role was ministerial—processing paperwork, signing documents, and executing instructions with limited visibility into the nature or magnitude of the transactions.

While he acknowledges his legal guilt and has accepted responsibility, Mr. Linares did not act out of greed or with malice, but rather due to a misplaced sense of loyalty and naiveté, exploited by co-defendants with superior knowledge and criminal intent. He has pleaded guilty, cooperated fully, forfeited the proceeds derived from his involvement, and has demonstrated sincere remorse and a willingness to rehabilitate.

As this memorandum will detail, the application of § 3553(a) factors strongly supports a sentence below the advisory guidelines—potentially including a non-custodial disposition—based on his minor role, the limited scope and foreseeability

of the relevant conduct attributable to him, his prompt acceptance of responsibility, and the principle of proportionality vis-à-vis other defendants in this matter. A sentence that reflects the individualized circumstances of Mr. Linares will not only achieve justice, but also reinforce the integrity of federal sentencing.

## II.   FACTUAL BACKGROUND AND ROLE IN THE OFFENSE

Gustavo Linares Guzman stands before this Court as a man whose brief and limited participation in a broad pharmaceutical diversion scheme was driven not by criminal sophistication or personal greed, but by the manipulative influence of a longtime acquaintance and co-defendant, Jose Armando Rivera Garcia. The Presentence Investigation Report, plea agreement, and the record uniformly reflect that Mr. Linares was a late entrant to an expansive conspiracy that predated his involvement by at least five years, and in which he held no managerial or decision-making role.

### A.   Entry into the Scheme and Nature of Participation

In or around 2018, Mr. Linares, then a resident of Puerto Rico with no criminal record or history of involvement in illegal activity, was recruited by Rivera to assist in the formation and operation of a corporate entity later identified as LDD Distributors LLC. According to undisputed portions of the PSR and the Government's sentencing response, Mr. Linares was not a participant in the inception, planning, or core development of the fraud. Rather, he was approached to

serve as a nominal officer and logistical facilitator of a preexisting scheme designed and managed by others.

Pursuant to Rivera's instructions, Mr. Linares traveled to Connecticut to open a business account at TD Bank and signed corporate formation documents on behalf of LDD. He was the sole signatory on the account, a fact heavily emphasized by the government; however, it is critical to understand that this designation was procedural rather than operational. The government itself acknowledges that Mr. Linares acted under Rivera's direction and that there is no evidence he had contact with other central conspirators, such as Boris Arencibia or Joshua Joles.

Mr. Linares's communications with the pharmaceutical buyer, LLC Wholesale Supply, were limited and entirely scripted or dictated by Rivera. There is no indication in the record that he set prices, negotiated terms, controlled inventory, or directed the movement of diverted pharmaceuticals. These strategic decisions were the exclusive domain of others with longstanding connections to both suppliers and purchasers.

### B.   Ministerial Role, Absence of Mens Rea, and Financial Disposition

The Government and the Probation Office agree that Mr. Linares received approximately $262,736 in payments related to his administrative functions. While this sum is not trivial, it is a mere fraction of the overall $78 million conspiracy, and it bears emphasis that there is no evidence Mr. Linares benefited from, or was even aware of, the full scale or illicit nature of the conspiracy. There is no indication that

Mr. Linares owned or controlled the diverted pharmaceutical products, nor that he had access to or profited from the millions in proceeds that flowed through the broader operation.

Indeed, the limited financial benefit realized by Mr. Linares is highly probative of his diminished role. The Eleventh Circuit has consistently recognized that where a defendant's gain is marginal and their tasks are compartmentalized, such factors may warrant a downward adjustment for minor or minimal participation. See *United States v. Rodriguez De Varon*, 175 F.3d 930, 940–44 (11th Cir. 1999) (en banc) (noting that limited knowledge, discretion, and gain are key factors in assessing mitigating role).

Mr. Linares's lack of mens rea further distinguishes his conduct. The record contains no evidence that he understood the technical requirements of pharmaceutical pedigree documentation, or that he personally engaged in falsification or fraudulent labeling. To the contrary, the emails, business records, and witness interviews suggest that he functioned as an unwitting intermediary, performing administrative tasks under the mistaken belief that he was assisting with a lawful business operation—a belief reinforced by Rivera's deliberate obfuscation and manipulation.

## C.  Temporal Scope and Isolation from the Core Conspiracy

The temporal limits of Mr. Linares's involvement also weigh heavily in favor of leniency. He was active for a discrete period beginning in 2018, shortly before the government executed warrants in 2019, whereas others in the conspiracy had been

involved for up to six years. Moreover, the government concedes that Mr. Linares had no interaction with the majority of the co-defendants and no involvement in the schemes involving other corporate entities or pharmaceutical pipelines.

This operational and relational isolation is highly relevant under Eleventh Circuit precedent. In *United States v. Martinez*, 584 F.3d 1022 (11th Cir. 2009), the court held that the sentencing court erred by failing to distinguish between a defendant's role and that of her more culpable co-conspirators, emphasizing that mere association with a fraudulent entity does not imply shared culpability for its entire financial footprint.

Here, there is no evidence that Mr. Linares orchestrated, expanded, or directed any aspect of the conspiracy beyond the circumscribed tasks assigned to him. His participation, though wrongful, was fundamentally different in character, scope, and intent from that of the ringleaders.

## III. OBJECTION TO LOSS ATTRIBUTION AND APPLICATION OF U.S.S.G. § 2B1.1

The sentencing enhancement applied to Mr. Linares under U.S.S.G. § 2B1.1(b)(1)(J), based on an alleged loss amount of **$7.3 million**, constitutes a fundamental misapplication of the law and fails to account for well-established Eleventh Circuit precedent requiring an individualized, fact-specific analysis of a defendant's role, agreement, knowledge, and reasonable foreseeability. The enhancement grossly inflates Mr. Linares's culpability and, if not corrected, would

result in a sentence that is arbitrary, excessive, and disproportionate in both absolute and relative terms.

## A. Legal Framework: The "Jointly Undertaken Criminal Activity" Standard

The Sentencing Guidelines provide that a defendant involved in a "jointly undertaken criminal activity" is accountable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). This enhancement is not automatic and requires a **conjunctive showing** of three distinct elements:

1. The conduct must have been **within the scope** of the jointly undertaken activity;

2. The conduct must have been **in furtherance** of that activity; and

3. The conduct must have been **reasonably foreseeable** to the defendant.

These criteria are conjunctive and cumulative, meaning the government must prove all three elements independently. Failure to satisfy any one renders the enhancement improper. See *United States v. Hunter*, 323 F.3d 1314, 1319–20 (11th Cir. 2003); *United States v. Martinez*, 584 F.3d 1022 (11th Cir. 2009).

Moreover, the burden lies with the government to prove the loss amount by a preponderance of the evidence, and the Court must conduct a "particularized inquiry" into the defendant's knowledge and agreement. See *United States v. Rodriguez*, 751 F.3d 1244, 1255 (11th Cir. 2014).

**B.   The Conduct Was Not Within the Scope of Mr. Linares's Agreement**

There is no evidence in the record that Mr. Linares entered into an agreement to jointly undertake an enterprise involving $7.3 million in diverted pharmaceuticals. He was not a founding member of the conspiracy. He was not involved in its inception, planning, or development. He had no role in determining the structure or objectives of the enterprise. To the contrary, he was introduced to the operation by Jose Rivera and served a purely ministerial function in signing forms, opening bank accounts, and responding to instructions provided to him.

The Guidelines commentary explicitly distinguishes between "jointly undertaken criminal activity" and "the overall conspiracy," warning courts not to assume that a defendant's membership in a broader scheme renders him liable for all acts of co-conspirators. U.S.S.G. § 1B1.3, cmt. n.3(B). The Eleventh Circuit has followed this guidance by holding that courts must define the "scope" of the defendant's undertaking with precision and not by mere association. *Hunter*, 323 F.3d at 1319.

In this case, neither the Government nor the PSR offers evidence that Mr. Linares knew of or agreed to a scheme of such magnitude. He did not recruit co-conspirators. He did not access wholesale pharmaceutical markets. He did not create falsified pedigrees. His scope of involvement—at best—was to facilitate banking functions for LDD at Rivera's behest.

## C.   The Conduct Was Not Reasonably Foreseeable to Mr. Linares

Even if the conduct was in furtherance of the conspiracy, it was not reasonably foreseeable to Mr. Linares. Reasonable foreseeability requires more than a theoretical possibility—it requires that the defendant actually anticipated or reasonably should have anticipated the acts of others. See *Rodriguez*, 751 F.3d at 1255. In this case, the record is silent as to any awareness by Mr. Linares of the scale of funds passing through the LDD account.

Importantly, the Government has not established that Mr. Linares had access to, or visibility over, the scope of funds deposited and disbursed from the account. He was not engaged in reconciling financial ledgers, tracking inventory, or pricing pharmaceuticals. His compensation—$262,736—over a period of many months is entirely inconsistent with the claim that he foresaw or embraced a $7.3 million operation.

This circuit has cautioned against attributing loss to defendants based merely on titular association with fraudulent entities. In *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995), cited favorably by other circuits, the court rejected an attempt to impose loss based on the defendant's role as a record-keeper, where there was no evidence of control or knowledge of the overall scheme.

## D.   Relative Proportionality and Horizontal Equity Among Co-Defendants

The application of the $7.3 million loss figure to Mr. Linares is not only legally deficient—it also violates principles of proportionality and sentencing equity among

9

similarly situated co-defendants. According to the PSR and the Government, the total scheme encompassed **$78 million** in diverted pharmaceuticals. Numerous co-defendants were sentenced to between 30 and 84 months for conduct involving far greater gains and organizational control.

By contrast, Mr. Linares:

1)   Joined the conspiracy five years after it began;

2)   Had no contact with the primary suppliers or buyers;

3)   Never handled, stored, or transported any pharmaceutical products;

4)   Received less than 0.4% of the total funds implicated in the conspiracy;

5)   Had no criminal record, no history of fraud, and no position of authority.

To attribute nearly 10% of the total loss to a clerical participant with no discretion, agency, or foresight—based solely on nominal account-holder status—would create a gross sentencing disparity and undermine public confidence in the fairness of federal sentencing.

### E.   A Properly Calculated Loss: $262,736 or Less

The most that can reasonably be attributed to Mr. Linares under § 2B1.1 is the amount he personally received—**$262,736**—inclusive of any payments used for administrative or operational costs. This figure results in a 12-level enhancement under U.S.S.G. § 2B1.1(b)(1)(G), as opposed to the 20-level enhancement applied by the PSR.

Should the Court determine that the personal gain was lower (e.g., $100,000 in net enrichment), a 10-level enhancement under § 2B1.1(b)(1)(F) would apply. Either scenario provides a more accurate and just reflection of Mr. Linares's culpability, consistent with Eleventh Circuit precedent and the statutory requirement that sentences be based on individualized, proportionate assessments.

## IV.   REQUEST FOR MINOR ROLE ADJUSTMENT UNDER U.S.S.G. § 3B1.2

Mr. Linares respectfully submits that a **mitigating role adjustment** is warranted pursuant to U.S.S.G. § 3B1.2. Based on his limited and peripheral participation in a broad, multi-million-dollar conspiracy, the record clearly supports a finding that he was **substantially less culpable** than the majority of his co-conspirators and that his conduct was consistent with that of a **minor** or potentially even **minimal participant** under prevailing Eleventh Circuit authority.

### A.   Legal Standard for Mitigating Role Adjustments

Section 3B1.2 of the Sentencing Guidelines authorizes a downward adjustment of two to four offense levels for defendants who are "substantially less culpable than the average participant." The commentary to the Guidelines outlines a flexible, fact-driven approach, stating:

> "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."
> — U.S.S.G. § 3B1.2, cmt. n.3(A)

The Eleventh Circuit in *United States v. De Varon*, 175 F.3d 930, 944 (11th Cir. 1999) (en banc), established a two-pronged framework to determine the applicability of a mitigating role adjustment:

1. The court must assess the **defendant's role in the relevant conduct for which he has been held accountable**.

2. The court must measure the defendant's conduct against that of **other participants in the same criminal scheme**.

Moreover, as the Eleventh Circuit explained in *United States v. Cruickshank*, 837 F.3d 1182, 1193 (11th Cir. 2016), a mitigating role is warranted when a defendant performs only limited tasks, is not involved in decision-making, and lacks knowledge or control over the criminal scheme's scope and mechanics.

## B. Mr. Linares's Conduct Was Logistical, Subordinate, and Lacked Discretion

The record overwhelmingly reflects that Mr. Linares had **no supervisory role**, **no discretion**, and **no access** to the decision-making functions of the conspiracy. He performed administrative tasks—signing incorporation papers, opening a bank account at Rivera's instruction, and communicating with counterparties using scripts drafted by others. Every one of these acts was done under the explicit direction of co-defendant Jose Rivera.

He was not involved in:

1) Recruiting co-conspirators;

2) Negotiating with buyers or suppliers;

3)    Pricing or packaging diverted pharmaceuticals;

4)    Drafting or falsifying documentation;

5)    Distributing or laundering proceeds beyond minimal clerical duties.

Indeed, the Government has acknowledged that Rivera—not Mr. Linares—was the architect of the LDD branch of the scheme, and that there is no evidence Mr. Linares had contact with the principal actors in the fraud. The PSR confirms that his role was functionally isolated, and that his interaction with the wider conspiracy was confined to the single strand orchestrated by Rivera.

In *United States v. Presendieu*, 880 F.3d 1228, 1249 (11th Cir. 2018), the Eleventh Circuit clarified that even where a defendant has direct contact with illegal funds or transactions, a mitigating role is appropriate when he lacks control, direction, or profit motive in the broader scheme. That description matches Mr. Linares exactly.

## C.  Relative Culpability Compared to Other Participants

Measured against other participants, Mr. Linares's culpability is markedly lower. Consider the roles of others:

1)    **Joshua Joles** and **Mohammad Mehdi Salemi** were central distributors managing the procurement and resale of diverted pharmaceuticals, responsible for $78 million in transactions.

2)    **Boris Arencibia**, **Frank Alvarez**, and others coordinated logistics, falsified documents, controlled inventory, and shared in massive profits.

3)    **Jose Rivera**, who recruited Mr. Linares, directed and supervised the operation of LDD, communicated with upstream suppliers, and orchestrated the laundering of proceeds.

By contrast, Mr. Linares:

1)     Entered the conspiracy five years after its inception;

2)     Was unaware of the full scope or criminal nature of the enterprise;

3)     Was not enriched in any significant way relative to the $78 million conspiracy;

4)     Was manipulated and directed by a co-defendant who exercised total control.

In *United States v. Cabezas-Montano*, 949 F.3d 567 (11th Cir. 2020), the court upheld a minor role adjustment for a mule who transported cocaine and cash for others but was not involved in planning, organizing, or profiting from the broader criminal enterprise. Mr. Linares's role is less culpable than that of a mule—he transported no drugs and retained no contraband.

## D.    Financial Gain Was Minimal Relative to Scheme Size

The financial benefit to Mr. Linares—approximately **$262,736**, and potentially as little as **$100,000**—was a tiny fraction of the overall funds implicated in the conspiracy. This fact is not merely incidental; it supports the well-accepted principle that **limited financial gain** is a key indicator of minor or minimal participation. See *United States v. Rodriguez De Varon*, 175 F.3d at 945.

In fact, according to the Government's own figures, Mr. Linares received less than **0.4%** of the total fraud proceeds, while assuming none of the responsibilities typically associated with those directing or controlling the operation. This differential weighs heavily in favor of a mitigating role.

### E.   Mr. Linares's Role Was Nonessential to the Conspiracy's Success

Courts have consistently emphasized that the defendant's role must be analyzed in the context of **necessity** and **replaceability**. In *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978), the Supreme Court emphasized that low-level functionaries who merely follow instructions without strategic input are not principal actors. Mr. Linares's tasks were easily delegable and non-essential—if he had not opened the bank account or signed the incorporation forms, Rivera or another subordinate could have done so.

Such facts support the finding of a **minor** or **even minimal** role under § 3B1.2. As noted in U.S.S.G. § 3B1.2, cmt. n.4, a minimal participant is someone "who plays a minimal role in concerted activity" and is "plainly among the least culpable." A two-level or even four-level reduction is therefore consistent with the Guidelines and supported by the record.

## V.   APPLICATION OF THE 18 U.S.C. § 3553(a) SENTENCING FACTORS

Under 18 U.S.C. § 3553(a), this Court is charged with the solemn responsibility of fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory objectives of federal sentencing. As the Supreme Court reaffirmed in *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), and *Gall v. United States*, 552 U.S. 38, 49–50 (2007), the Sentencing Guidelines are **advisory**, not mandatory, and

must yield to an individualized assessment of the § 3553(a) factors in any case where the Guidelines produce a sentence that exceeds what justice demands.

Mr. Linares submits that a faithful application of the § 3553(a) criteria compels a downward variance. The nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to be just, proportionate, and effective all counsel in favor of leniency.

## A.   The Nature and Circumstances of the Offense

The offense in this case, while serious, was one in which Mr. Linares played a **limited, late-stage, and operational** role. He did not conceive of, design, finance, or direct the criminal enterprise. He did not sell, distribute, handle, or manufacture any diverted pharmaceutical products. He was not a participant in any planning meetings or strategy sessions. His involvement was confined to ministerial tasks dictated to him by Jose Rivera, a higher-ranking co-defendant.

Moreover, Mr. Linares's participation commenced in 2018—**five years after** the inception of the conspiracy—and terminated within a relatively short timeframe. His limited actions consisted of:

1) Signing incorporation papers for LDD Distributors LLC;

2) Opening a bank account on Rivera's instruction;

3) Processing funds and submitting documentation as directed.

He lacked both the authority and knowledge to deviate from Rivera's instructions and had no communication with or awareness of the other members of

the wider scheme. As such, the conduct attributable to him—while not excused—was sharply constrained both in form and function.

This is not the conduct of a mastermind, organizer, or profiteer. Rather, it is the conduct of a **naïve, first-time offender** who was manipulated into performing clerical tasks with limited understanding of the full implications of his role. In short, Mr. Linares was a **peripheral facilitator**, not a principal actor. The Eleventh Circuit has recognized that such distinctions are critical under § 3553(a). See *United States v. Clay*, 483 F.3d 739, 744 (11th Cir. 2007) (recognizing the Court's discretion to reduce sentences where the Guidelines overstate the defendant's culpability).

## B.    The History and Characteristics of the Defendant

Gustavo Linares Guzman is a 39-year-old U.S. citizen with **no prior criminal history**. He is college-educated, has maintained a law-abiding life, and has strong family and community ties in Puerto Rico. His life has been defined by hard work, humility, and service—not by greed or exploitation.

Unlike other co-defendants, Mr. Linares has never previously interacted with the criminal justice system. This prosecution has had a profound and lasting impact on his life. He is subject to public humiliation, professional setback, emotional trauma, and the weight of federal prosecution. Moreover, the collateral consequences—including potential professional disqualification, reputational damage, and economic hardship—have already imposed a severe penalty.

The Supreme Court has made clear that a defendant's personal history and characteristics are fundamental considerations under § 3553(a). See *Pepper v. United States*, 562 U.S. 476, 488 (2011) (district court must consider evidence of a defendant's rehabilitation and personal circumstances post-offense).

This Court has the benefit of sentencing a person who has shown remorse, accountability, and a commitment to rehabilitation—not recidivism.

**C.   The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

While the offense is undeniably serious, a **just punishment** must reflect **individual culpability**, not collective guilt. A sentence tethered to the $7.3 million loss amount, which Mr. Linares neither orchestrated nor foresaw, would distort the purpose of federal sentencing and fail to serve the principles of fairness and proportionality.

Mr. Linares has already forfeited more than $262,000, agreed to the entry of a forfeiture judgment, and accepted responsibility through a timely plea agreement. A sentence within the current guideline range—enhanced by 20 levels for a grossly overstated loss—would produce a punishment **grossly disproportionate** to his role and inconsistent with sentences imposed on far more culpable co-defendants.

This Court is not bound to impose such a sentence. As the Supreme Court held in *Gall*, 552 U.S. at 50, "A sentencing judge must make an individualized assessment

based on the facts presented," and need not defer to the Guidelines if they fail to reflect a just outcome.

**D.    The Need to Avoid Unwarranted Sentencing Disparities**

Section 3553(a)(6) requires this Court to avoid unwarranted disparities among defendants "with similar records who have been found guilty of similar conduct." Here, many co-defendants who participated **earlier**, **longer**, and with **greater authority and profit** than Mr. Linares have received sentences ranging from **30 to 84 months**.

Imposing a sentence on Mr. Linares that approaches or exceeds those terms would be **anomalous and unjust**. Unlike those defendants, Mr. Linares:

1) Did not control diverted drug inventory;

2) Did not falsify or create documentation;

3) Did not engage with national or international supply chains;

4) Did not organize or lead any part of the conspiracy;

5) Did not enjoy profits on a scale remotely comparable to others.

The Eleventh Circuit has emphasized that sentencing disparities offend the purpose of federal sentencing when they result from "mechanistic" application of enhancements unmoored from culpability. See *United States v. Irey*, 612 F.3d 1160, 1220 (11th Cir. 2010) (en banc).

**E.    The Need for Deterrence and Public Protection**

There is no indication that Mr. Linares poses any future threat to the public or the integrity of pharmaceutical markets. His role was isolated and reactive, not strategic or predatory. He has accepted full responsibility and has demonstrated sincere remorse.

Any marginal deterrent effect achieved by a lengthy custodial sentence is outweighed by the disproportionality such a sentence would reflect. Specific deterrence has already been achieved through the prosecution, public record, financial loss, and life disruption Mr. Linares has experienced. General deterrence, meanwhile, is preserved by the prosecution of this extensive conspiracy as a whole—not by selecting Mr. Linares for excessive punishment.

As the Eleventh Circuit noted in *United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009), "[D]eterrence does not require that every participant in a conspiracy receive the same punishment regardless of their culpability."

## VI.  CONCLUSION AND SENTENCING RECOMMENDATION

This Court is tasked with a profound responsibility—to impose a sentence that achieves the ends of justice, promotes accountability, and reflects the individual circumstances of the defendant before it. In the case of Gustavo Linares Guzman, the application of this duty compels mercy and moderation.

As demonstrated throughout this memorandum, Mr. Linares's conduct was the product of manipulation by a more culpable co-defendant. His involvement was limited in both duration and depth. He did not originate, control, or orchestrate any

part of the fraudulent conspiracy. His financial gain was minimal. He joined late, acted under direct instruction, and lacked insight into the scale or structure of the operation.

He is a first-time offender with strong family and community ties, who has demonstrated sincere remorse, forfeited proceeds, and accepted responsibility without hesitation. He poses no threat to public safety, and the deterrent effect of pros19-ecution and conviction has already been served.

Sentencing Mr. Linares in line with the inflated guideline range would produce an unjust, disproportionate, and excessive result—one that punishes him not for his conduct, but for the conduct of others over whom he exercised no influence.

**For these reasons, Mr. Linares respectfully requests that this Honorable Court:**

1. **Sustain his objection** to the PSR's loss calculation under U.S.S.G. § 2B1.1 and adopt a reduced loss amount not to exceed $262,736— if not the lower figure of $100,000—resulting in a lower base offense level;

2. **Grant a 2-level minor role adjustment** under U.S.S.G. § 3B1.2(b), based on the totality of the circumstances and Eleventh Circuit precedent;

3. **Consider a downward variance** from the advisory guideline range pursuant to 18 U.S.C. § 3553(a), in recognition of Mr. Linares's limited culpability, personal history, and the profound collateral consequences already borne;

4. **Impose a sentence that is sufficient, but not greater than necessary**, which may include a term of probation or home confinement, or in the alternative, the minimum custodial sentence necessary to serve the objectives of justice.

Justice does not demand uniformity; it demands **individualization**. The unique facts of this case, when weighed carefully and conscientiously under the law, support a sentence of **substantial leniency** for Mr. Linares.

Respectfully submitted this 6th day of May, 2025.

                                          **/s/ Edwin Prado Galarza**
                                          **Edwin Prado Galarza**
                                          Counsel for Gustavo Linares Guzman
                                          Florida Bar No. 1008115
                                          Prado Law Offices
                                          111 N. Orange Ave. Suite 800 Unit 849
                                          Orlando, FL 32801
                                          Email: pradolaw10@gmail.com
                                          Phone: (407) 420-7926


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May  2025, I electronically filed the foregoing **Sentencing Memorandum in Support of Leniency** on behalf of Defendant **Gustavo Linares Guzman** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Assistant United States Attorney of record, **Frank H. Tamen**, and to all other counsel of record.

**/s/ Edwin Prado Galarza**
**Edwin Prado Galarza**
Counsel for Gustavo Linares Guzman